UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KEVIN JONES,                              )
                                          )
                Plaintiff,                )
                                          )
        v.                                )        Case No. 4:23CV168 JAR
                                          )
TEK SOLV,                                 )
                                          )
                Defendant.                )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. ECF No. 26. Plaintiff filed his response in opposition. ECF No. 39. For the reasons set forth below, Defendant's Motion will be granted.

### Background

On February 14, 2023, Plaintiff Kevin Jones filed his *pro se* Complaint against Defendant TekSolv, Inc., for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.,* the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq*., and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. Plaintiff alleges that Defendant discriminated against him because of his race/color, religion, age and disability and retaliated against him after complaining of such discrimination by terminating him. On May 1, 2024, an attorney entered on behalf on Plaintiff.

Defendant filed the instant motion, claiming it is entitled to summary judgment on Plaintiff's Complaint in its entirety. Defendant also filed a Statement of Uncontroverted Material Facts in Support of its Motion. Plaintiff responded to the statement of facts and noted his opposition. Plaintiff also filed his response in opposition to Defendant's Motion for Summary

Judgment, but only as to the race/color and retaliation claims. Plaintiff submitted his own Statement of Uncontroverted Material Facts. Plaintiff does not oppose granting summary judgment for his religion, age and disability claims based on failure to exhaust his administrative remedies. The parties each attached exhibits, including affidavits and portions of deposition testimony, with their respective memoranda.

**Facts**

As an initial matter, the Court notes that a majority of the facts that Plaintiff disputes are either self-serving, conclusory statements from his own deposition testimony or are unsupported by the evidence. Where Plaintiff establishes that a justifiable inference may be drawn in his favor, the Court accepts Plaintiff's version of events as true. However, self-serving, conclusory statements without support are insufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). "The Court therefore does not consider statements...which merely constitute personal opinions as opposed to facts." *Woods v. Wills*, 400 F. Supp. 2d 1145, 1162 n. 7 (E.D. Mo. 2005); *see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (holding that in response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'").

The following facts are taken from Defendant's Statement of Uncontroverted Material Facts [ECF No. 28] and are undisputed, unless otherwise noted with a citation to the record:

Defendant TekSolv is a safety company, providing rescue services involving confined space and fire, hole and bottle watch attendants and supervisors to clients working in dangerous conditions. ECF No. 28-1, Affidavit of Chris Shay at ¶ 4.

In 2021, Plaintiff Kevin Jones began working for Defendant as a Fire and Hole Watch Attendant ("Attendant") through a temporary staffing agency and was later hired as a full-time employee in December that same year. Plaintiff's duties as an Attendant included, among other things, continuously maintaining an accurate count of entrants in a confined space, protecting personnel working by monitoring the air quality and pressure being delivered to workers, and remaining outside the confined space during the confined space operations. It is the responsibility of the Attendant to control access to the space, maintain communication with entrants, and maintain an accurate count of the number of entrants. If there is a need for an Attendant to leave his/her post, then either all of the entrants must leave the space, or the Attendant can be relieved by another trained and qualified Attendant. Defendant employs people, referred to as "floaters," to allow Attendants regular breaks while on duty.

Defendant was hired by U.S. Steel to provide oxygen monitoring services while their workers made repairs at the U.S. Steel plant in Granite City, Illinois. The repairs involved cutting and welding inside an enclosed space accessed from a hole on the side of a piece of infrastructure located several stories in the air. Potential dangers to the U.S. Steel workers were atmospheric and injury related in nature and included toxic gas exposure. An Attendant was necessary to ensure safe oxygen levels and to initiate evacuations should it become necessary during these repairs.

On January 26, 2022, Plaintiff was assigned as the Attendant for the workers in the confined space at the U.S. Steel plant. It was critical that Plaintiff accurately record the levels of oxygen, carbon monoxide, hydrogen sulfide and other dangerous gases at fifteen-minute intervals while the workers were in the confined space. When the assigned floater, Don Bouse

3

("Bouse"), arrived at Plaintiff's station that day, Plaintiff was not there. According to

Defendant's supervisor, Chris Shay, Bouse went to Plaintiff's post to allow him a break. *Id.* ¶ 13.

Plaintiff's log was pre-populated with readings fabricated beyond the current time in violation of

work safety rules. *Id.* at ¶ 16. Further, the log reflected that all occupants had vacated the hole

when they had not. *Id.* at ¶ 17. Employees of both Defendant and the client, U.S. Steel,

confirmed Plaintiff was not at his post when the client's workers were exiting the confined hole.

*Id.* at ¶ 18. Shay found Plaintiff sitting in a TekSolv truck parked near the work site. Plaintiff

acknowledged that he was not aware that someone was still left inside the hole. ECF No. 28-2,

Plaintiff's Deposition at 92:10-16. 20.

At some point, on that same date, Bouse confronted Plaintiff after the incident. Bouse

called Plaintiff names, including "lazy N," "lazy MF'er," "lying son of a B," "piece of trash,"

and "worthless." Bouse was disciplined for his conduct after the incident and was required to

complete further training.

On February 11, 2022, Defendant terminated Jones, who was 33 years old at that time,

for the life safety violation and falsifying paperwork incident that occurred on January 26, 2022.

ECF No. 28-1, Affidavit of Chris Shay at ¶ 25; ECF No. 28-5, TekSolv Change of Personnel

Status Form at 1; and ECF No. 28-6, Performance Warning at 1. Shay swore in his affidavit that

leaving a station unattended with workers still inside is not only a life safety violation, but

grounds for immediate termination according to both TekSolv and U.S. Steel. ECF No. 28-1,

Affidavit of Chris Shay at ¶ 22.

On November 9, 2022, Plaintiff filed his charge of discrimination against Defendant,

which stated as follows:

4

I was employed with the above-named employer from June 2021 until I was terminated on or around January 26, 2022. My position was Firewatch and Hole Watch Technician making $18 an hour. My supervisor was Sarah Wenzel, and her supervisor was Chris Shay, Operations Manager. Throughout my tenure with my employer, other African American employees and I were subjected to patterns and practices of discrimination, racial harassment, and a difference in terms and conditions. In the Summer of 2021, Don Bouse, Firewatch and Hole Watch Technician, tied a rope into a noose in front of Mr. Shay. He laughed and waved it around in from of African American employees. In September 2021, employees in my position were ordered to shave. The African American employees shaved, and the White employees did not until I complained to Ms. Wenzel. In January 2022, I complained to Ms. Wenzel that all African American employees wore red helmets and White employees wore gray helmets. After the complaint, I suffered retaliation by being assigned to a less desirable post. White employees were given space heaters, and I was not. On January 25, 2022, I was verbally assaulted by Mr. Bouse. He screamed in my face, called me Nigger and slit his finger across his throat threateningly. I complained to Ms. Wenzel and Mr. Shay, citing racial discrimination. I was discharged the next day by Bryan Jones, Executive Vice President. I believe I have been discriminated against due to my race, African American, by being subjected to harassment, a difference in terms and conditions, and retaliated against for making a complaint by being subjected to further harassment, difference in terms and conditions, and discharged in violation of Title VII of the Civil Right Act of 1964, as amended.

ECF No. 27-1, Plaintiff's Charge of Discrimination at 3.

On February 14, 2023, the U.S. Equal Employment Opportunity Commission (EEOC) determined it would not proceed further with its investigation and issued Plaintiff's right to sue letter.

On February 14, 2023, Plaintiff filed this action and explained the essential facts of his claim were:

I was Let go from My position with Tek Solv[] from A Big Misunderstanding That Lead To Being cussed at And call Race Names Like Lazy N words, And By Tek Solv Supervisor was The one To Do it[,] This Act of Racism To me[.] Iv[e] Complained of This sup[er]visor once Before[.] Don was a[n] Old Racist Guy Nobody wanted to work with…I was Fired over The Phone from Tek Solv Cor[porate] Office []. Iv[e] filed with The EEOC while Don continued To work and Take [care] of His Family.

ECF No. 1, Plaintiff's Complaint at 5.

## Summary Judgment Standard

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine [dispute] of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn*., 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id*. "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). Once the moving party has met its burden, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks and citation omitted).

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v.*

6

*Gaines,* 536 F.3d 813, 818 (8th Cir. 2008). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. 242 at 252; *see also, Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005).

## Discussion

Plaintiff alleges race/color discrimination and retaliation under Title VII. Defendant argues it is entitled to summary judgment on both claims because Plaintiff does not make a prima facie case.

Race/Color Discrimination

*Direct Evidence*

Plaintiff argues that there is direct evidence to support his race/color discrimination claim. Direct evidence of discrimination is that which shows a strong causal connection between the alleged discriminatory animus and the adverse employment action. *Torgerson*, 643 F.3d at 1044 (citing *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). It must be "sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Id*. Direct evidence can be circumstantial in nature, *id.*, and "includes 'evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude.'" *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 966 (8th Cir. 2006) (quoting *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993)).

As direct evidence, Plaintiff points to when Bouse called him "race names," specifically "lazy N." Plaintiff insists that Bouse had a supervisory role with Defendant, and Defendant is

using Bouse as the "cat paw" for his termination. The Eighth Circuit has explained the "cat's paw" rule "provides that an employer cannot shield itself from liability for unlawful termination by using a purportedly independent person or committee as the decisionmaker where the decisionmaker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design." *Richardson v. Sugg,* 448 F.3d 1046, 1060 (8th Cir. 2006) (quotation omitted). Unlike Plaintiff, Defendant produced sufficient evidence to demonstrate that Bouse was not a supervisor nor had any involvement in the decision to terminate Plaintiff. For instance, Shay declared in his affidavit that he was Plaintiff's supervisor on January 26, 2022, the date of the incident, not Bouse. ECF No. 28-1, Affidavit of Chris Shay at ¶ 25. Shay also swore in his affidavit that leaving a station unattended with workers still inside is not only a life safety violation, but grounds for immediate termination according to both TekSolv and U.S. Steel. *Id.* at 22. Defendant attached its Personnel Status Form and Performance Warning for Plaintiff, signed in February 2022, that reflected Chris Shay and/or Sarah Weitzel as Plaintiff's supervisor. ECF No. 28-5, TekSolv Change of Personnel Status Form at 1; and ECF No. 28-6, Performance Warning at 1. These documents also indicated that the reason for Plaintiff's termination was for a life safety violation and falsifying paperwork on January 26, 2022, when he left his station with workers still present in the confined space. *Id.* Defendant's Human Resources Manager, Jenny Mouser, also stated in her unsworn declaration, under the penalty of perjury, that Bouse never held a supervisory role, was not involved in the decision to terminate Plaintiff, nor were his statements alone the sole reason for his termination. ECF No. 45-1, Mouser's Declaration at ¶¶ 5-8. Mouser declared that Defendant performed an investigation into Plaintiff's life safety violation and spoke with other employees and workers present on the date of the incident. *Id.* at ¶

8

9. A copy of Plaintiff's prepopulated log was also attached to Mouser's declaration reflecting those workers had exited the hole, and Defendant's investigation revealed workers later confirmed they had not actually left the hole as recorded in Plaintiff's log. Plaintiff's Confined Space Log Sheet, ECF No. 45-2; ECF No. 45-1, Mouser's Declaration at ¶¶ 9-11. Plaintiff did not produce any evidence to support that Bouse was a supervisor or had any involvement in the ultimate decision for his termination other than his own self-serving, conclusory statements in his affidavit. In fact, Plaintiff stated in his EEOC charge that his "supervisor was Sarah Wenzel, and her supervisor was Chris Shay, Operations Manager," which further supports Defendant's evidence that Bouse was not his supervisor or involved in the decision-making process related to Plaintiff. ECF No. 27-1, Plaintiff's Charge of Discrimination at 3. *See Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006) (remarks by employee with no hiring authority were not direct evidence because record had no evidence the employee influenced the hiring decisionmaker). Plaintiff has also not identified any link—let alone a specific link— between Bouse's remark and any adverse action that he alleges. Plaintiff's claim fails because the record before the Court shows that Bouse was not a supervisor or involved in any employment decision related to him. *See Twymon*, 462 F.3d 925, 933 (8th Cir. 2006) (stray workplace remarks, statements by non-decisionmakers, or statements by decisionmakers that are not related to the decisional process itself do not constitute direct evidence); *see also, Radabaugh*, 997 F.2d at 449 (explaining that statements by non-decisionmakers do not support an inference of discrimination). Therefore, Bouse's statement is not direct evidence of racial animus. Further, because there is no evidence that Bouse was in a supervisory position over Plaintiff, the cat's paw theory of liability does not apply. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (holding

9

that the cat's paw theory applies if a supervisor performs an act motivated by discriminatory animus that is "*intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action." (emphasis in original)); *see also*, *Goodman v. Performance Contractors, Inc*., 363 F. Supp. 3d 946, 959 (N.D. Iowa Jan. 30, 2019) (finding cat's paw theory not applicable to non-supervisory employees).

Plaintiff next argues that it was actually Shay and Bouse who worked together to get him fired based on his race/color. Plaintiff points to an incident in the Summer of 2021, where Bouse tied a rope into a noose in front of Shay and laughed while waving it around in front of African American employees. Plaintiff alleges that Shay told Bouse he could not do this, but then fired an African American employee instead of Bouse, who is white. According to Plaintiff, this is direct evidence that he was terminated for discriminatory reasons.

Defendant argues that since this incident in not in his Complaint, the Court should not consider it. Although it is not alleged in his Complaint, Plaintiff did include this incident in his EEOC charge. Claims which are "like or reasonably related" to the substance of the charges in the EEOC complaint are deemed administratively exhausted and are properly within the scope of the lawsuit. *Tart v. Hill Behan Lumber Co*., 31 F.3d 668, 673 (8th Cir. 1994). However, even with considering this incident, Plaintiff fails to show any casual connection between this discriminatory animus and his termination, which occurred nearly eight months later. Plaintiff also does not provide any evidence to show that individual was indeed fired, other than his own self-serving statements, nor can he connect that incident with anything related to his termination. Nothing about the other individual's termination "clearly points to the presence of an illegal motive" in Plaintiff's case. *See Towery v. Mississippi Cnty. Arkansas Econ. Opportunity*

*Comm'n, Inc.,* 1 F.4th 570, 573 (8th Cir. 2021) (holding that Plaintiff failed to show how co-workers termination based on race is a "specific link" between her firing and an unlawful reason for her termination.).

*Indirect Evidence*

Since Plaintiff has no direct evidence of discrimination, the Court will analyze his claim of color/race discrimination under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the initial burden rests with Plaintiff, who must establish a prima facie case of discrimination or retaliation by a preponderance of the evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *see also, Carpenter v. Con–Way Cent. Express, Inc.,* 481 F.3d 611, 616 (8th Cir. 2007). To do so, Plaintiff must show that he: "'(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination.'" *Schaffhauser v. United Parcel Serv., Inc*., 794 F.3d 899, 903 (8th Cir. 2015) (quoting *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012)). After Plaintiff has made a sufficient showing of a prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Gordon v. Shafer Contracting Co.,* 469 F.3d 1191, 1196 (8th Cir. 2006). Once such a reason is articulated, the burden of production shifts back to Plaintiff to demonstrate that the proffered nondiscriminatory reason is a pretext for discrimination. *Id.* At this third step, Plaintiff is obligated to present evidence that (1) creates a question of material fact as to whether a defendant's proffered reasons are pretextual and (2) creates a reasonable inference that the discrimination was a determinative factor in the adverse employment decision.

11

*See, e.g., Stewart v. Indep. Sch. Dist. No. 196,* 481 F.3d 1034, 1043 (8th Cir. 2007); *Logan v. Liberty Healthcare Corp.,* 416 F.3d 877, 880 (8th Cir. 2005).

Plaintiff is a member of a protected class to meet the first element of the *McDonnell Douglas* framework, but Plaintiff's claim fails under the second element because he was not meeting the legitimate expectations of the employer. While the "burden of establishing a prima facie case...is not onerous," Plaintiff "must satisfy every element of his prima facie case, carrying at all times the 'ultimate burden of proof and persuasion' to establish that the employer discriminated against him on an impermissible basis." *Torgerson*, 643 F.3d at 1046-47.

Plaintiff argues in his response that he did meet the legitimate expectations of Defendant because he was told by management that he was great at his job, and he did not wrongly leave his station on January 26, 2022, because no workers were still in the confined space. Plaintiff's self-serving allegations cannot be considered as sufficient evidence to establish a prima facie case. Plaintiff failed to offer any evidence to suggest he met Defendant's legitimate expectations. To the contrary, on January 26, 2022, it is undisputed that when Bouse arrived at Plaintiff's station that day, Plaintiff was not there. It is further undisputed that employees of both Defendant and the client, U.S. Steel, confirmed Plaintiff was not at his station when the client's workers were exiting the confined hole. Plaintiff's log also reflected that all occupants had vacated the hole when they had not. Shay then found Plaintiff sitting in a TekSolv truck parked near the work site. Plaintiff admitted in his deposition he "wasn't aware that someone was still left inside," and it was the "only mistake" he had made during his employment with Defendant. ECF No. 28-2, Plaintiff's Deposition at 92:9-16. Although the Court believes it is certainly possible that Plaintiff was not "aware" that someone was still in the confined space when he left his

12

station, the undisputed facts show differently. It is also undisputed that Plaintiff's duties as an Attendant included continuously maintaining an accurate count of entrants in a confined space, protecting personnel working by monitoring the air quality and pressure being delivered to workers, and remaining outside the confined space during the operations. Leaving a station unattended with workers still inside is not only a life safety violation, but grounds for immediate termination. The undisputed facts show that Plaintiff committed a life safety violation and falsifying paperwork on January 26, 2022, and was terminated on February 11, 2022. Because Plaintiff failed to demonstrate he met Defendant's legitimate expectations, he fails to establish a prima facie case of race discrimination.

Even if the Court found that Plaintiff established a prima facie case of race discrimination, Defendant has offered legitimate, nondiscriminatory reasons for Plaintiff's termination as described above. The burden thus shifts back to Plaintiff to show that the proffered reason was mere pretext for discrimination.

To show pretext, Plaintiff "must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *Lindeman v. Saint Luke's Hosp. of Kan. City*, 899 F.3d 603, 606 (8th Cir. 2018) (citation omitted). "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). "[T]he showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee." *Roeben v. BG Excelsior Ltd. P'ship.*, 545 F.3d

13

639, 643 (8th Cir. 2008) (quoting *Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005)).

Plaintiff "must do more than simply create a factual dispute as to the issue of pretext; he must

offer sufficient evidence for a reasonable trier of fact to infer discrimination." *Wilking v. Cnty. of*

*Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998) (citation omitted). "A plaintiff must also demonstrate

'that the circumstances permit a reasonable inference' of discriminatory animus." *Roeben,* 545

F.3d at 643.

Plaintiff argues that Defendant used the safety violation incident in January 2022 as an

excuse for his termination when it was really because of his race/color. Plaintiff argues a white

employee named "Austin," violated Defendant's safety policies, and was promoted instead of

being fired. Plaintiff provides no evidence to support these claims, other than his own self-

serving allegations. In its reply, Defendant attached an unsworn declaration of its Human

Resources Manager, Jenny Mouser, which directly contradicts this allegation. ECF No. 45-1,

Mouser's Declaration. Mouser stated, under the penalty of perjury, that no employee by the

name of "Austin" committed a life safety violation or was promoted while Plaintiff was

employed with Defendant. *Id.* at ¶ 3. Mouser further declared that Defendant had no record of

any employee committing a life safety violation who was not terminated immediately. *Id.* at ¶ 4.

Plaintiff further maintains that even if he did not follow the work policies, Defendant did not fire

Bouse when he drank on the job and made racial slurs, which is also against Defendant's own

polices. Defendant correctly points out that Bouse did not commit violations similarly situated to

those that Plaintiff committed. Defendant explained Bouse was ordered to receive mandatory

training for his behavior relating to racial slurs in accordance with its policy for these issues, and

was soon after terminated on March 21, 2022, for other reasons. There was no evidence

submitted that showed Bouse drank on the job. There is also no evidence before the Court that Bouse's conduct was subject to immediate termination under Defendant's polices, as was Plaintiff's conduct. Plaintiff fails to establish how Bouse's violations, that were not related to life safety violations and falsifying records like those Plaintiff committed, caused him to be similarly situated.

Plaintiff also attacks Defendant's investigation process. Plaintiff claims that Defendant did not look into his racial discrimination claim against Bouse, but then immediately fired him without cause after Bouse's allegations that he left his post. Plaintiff argues that this supports a finding that his discharge was motivated by retaliatory intent. However, the question is not "whether the facts actually raised proper grounds to terminate" Plaintiff, but rather whether Defendant "honestly and reasonably believed" it had proper grounds to terminate. *Jensen v. IOC Black Hawk Cty. Inc.*, No. 15-cv-2082-LRR, 2016 WL 6080815, at *13 (N.D. Iowa Oct. 17, 2016); *see also, Johnson*, 422 F.3d at 762–63 ("Thus even if AT & T had no solid proof that Johnson made the bomb threats, and even if AT & T was mistaken in its belief that Michael Johnson had made the threats, any such mistake does not automatically prove that AT & T was instead motivated by unlawful discrimination.").

"The appropriate scope of an internal investigation ... is a business judgment" and the court does not "review the rationale behind such a decision." *Pulczinski v. Trinity Structural Towers, Inc*., 691 F.3d 996, 1005 (8th Cir. 2012). In *Pulczinski*, the Eighth Circuit explained that "[e]mployers are allowed to make even hasty business decisions, so long as they do not discriminate unlawfully, and there is no evidence here that the company purposely ignored relevant information or otherwise truncated the inquiry because of an animus against" the

15

plaintiff. *Id.*; *see also, Roeben,* 545 F.3d at 643 ("Even if Roeben could show that the Peabody's investigation was poorly conducted or that its decision was impetuous, that alone would not allow him to survive summary judgment."). Thus, even if the investigative procedures demonstrate that Plaintiff was treated unfairly, that does not mean such evidence "support[s] a reasonable inference" of a prohibited motive. *Malloy v. United States Postal Serv*., No. 4:11-CV-00160, 2013 WL 12087178, at *10 (S.D. Iowa Mar. 13, 2013).

Here, Mouser's declaration confirms that there was an investigation by Defendant into both Plaintiff's complaint against Bouse, and Bouse's reported life safety violation against Plaintiff on January 26, 2022. ECF No. 45-1 ¶ 9. Mouser declared that in addition to Bouse, Defendant spoke directly to Plaintiff about the incident and informed him that he was being investigated for a life safety violation. *Id.* at ¶ 13. Mouser also confirmed that Defendant spoke to at least four other employees, and workers who were working in the confined space that day. *Id.* at ¶ 9. Plaintiff's confined space log further supported that he had left his post while workers were still in the confined space. *Id.* at ¶¶ 11-12. Eyewitness reports to employers about alleged behavior support an employer's honest belief about a reported incident. *See Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004) ("It is undisputed that eyewitnesses reported to Harsco supervisors that Hitt threatened force."); *Macias Soto v. Core-Mark Int'l, In*c., 521 F.3d 837, 842 (8th Cir. 2008) ("The evidence in the record shows Core-Mark's determination was based on the statements of two witnesses and information provided by" a manager); *Jensen*, 2016 WL 6080815, at *13 (Finding the fact that the employer investigated by soliciting statements from the plaintiff and two others supports the conclusion that the employer honestly believed the plaintiff engaged in prohibited behavior).

16

Plaintiff has not provided evidence for a reasonable jury to infer that discrimination based on his race/color was the real reason for his termination. *See Lindeman*, 899 F.3d at 606. "No specific facts suggest that [Defendant's] actions were more likely motivated by race than by its proffered justification." *Schaffhauser,* 794 F.3d at 905. Defendant gave Plaintiff a legitimate reason for his termination after leaving his station while workers were in a dangerous confined space without supervision. Plaintiff has not raised a genuine question of material fact that Defendant's determinations were not made reasonably and in good faith. *See Cronquist v. City of Minneapolis*, 237 F.3d 920, 928 (8th Cir. 2001). Further, Plaintiff offers no evidence, other than his own bald assertions, to contradict Defendant's evidence. *Shanklin v. Fitzgerald*, 397 F.3d 596, 603 (8th Cir. 2005). Simply stating that he was not aware that workers were left in the confined space, when Defendant determined after its investigation that they were indeed, is insufficient to create a genuine issue of material fact, where such assertions are totally unsupported by the record. Employment discrimination laws prohibit "intentional discrimination based on certain, discrete classifications; [they] do[ ] not prohibit employment decisions based on other factors, such as job performance, erroneous evaluations, personality conflicts, or even unsound business practices." *Rose–Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998). "[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp*., 63 F.3d 771, 781 (8th Cir. 1995). For these reasons, the Court will grant summary judgment in Defendant's favor as to Plaintiff's race/color discrimination.

17

Retaliation

To establish a prima facie case of retaliation, Plaintiff must show (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal connection between the protected activity and the adverse employment action. *Tolen v. Ashcroft*, 377 F.3d 879, 883 (8th Cir. 2004). Defendant then may rebut Plaintiff's prima facie "case by advancing a legitimate, non-retaliatory reason for the adverse" action it took against him. *Rheineck v. Hutchinson Tech., Inc*., 261 F.3d 751, 757 (8th Cir.2001). "If the defendant makes this showing, the plaintiff must demonstrate the defendant's proffered reason was a pretext for illegal retaliation." *Id.*

Assuming, without deciding, that Plaintiff meets the first two elements, Plaintiff's retaliation claim fails under the third element because he cannot establish a causal connection between the protected activity and the adverse employment action. Plaintiff claims that he engaged in protected activity twice. In September 2021, employees in his position were ordered to shave. The African American employees shaved, and the white employees did not until he complained to Wenzel. Plaintiff does not allege an adverse employment action occurred after this complaint. The second complaint Plaintiff made was in January 2022, when he complained to Wenzel that all African American employees wore red helmets and white employees wore gray helmets. After the complaint, Plaintiff alleged in his EEOC charge that he suffered retaliation by being assigned to a less desirable post. Plaintiff also complained that white employees were given space heaters, and he was not. Plaintiff attempts to tie the January 26, 2022, incident to these complaints when Bouse called him racial slurs after he left his station while workers were still present. However, the undisputed facts show that after an internal investigation, Defendant

18

terminated Plaintiff on February 11, 2022, due to his violation of a life safety violation and falsifying records on that January date. Violations of this extreme were subject to immediate termination under Defendant's polices. Despite Plaintiff's argument of temporal proximity between the January helmet complaint and the adverse employment action, "more than a temporal connection is required to present a genuine factual issue on retaliation." *Arraleh*, 461 F.3d at 977. Although it is true that the period of the second complaint to Plaintiff's termination is much closer in time than the first complaint, Plaintiff poor performance resulting in a life safety violation overwhelms any temporal relationship between them. The Eighth Circuit "has often expressed an inclination to discount temporal proximity due to the perceived risk that employees who anticipate discipline or adverse actions might preemptively engage in protected conduct to complicate or forestall such discipline or to set the stage for later retaliation claims." *Donathan v. Oakley Grain, Inc.,* 861 F.3d 735, 742 (8th Cir. 2017) (citing *Wilson v. Ark. Dept. of Human Servs.,* 850 F.3d 368, 376 (8th Cir. 2017); *see also, EEOC v. Kohler Co.*, 335 F.3d 766, 773 n. 7 (8th Cir .2003) ("[T]iming alone is usually insufficient to establish that the employer's legitimate non-discriminatory reason for discharge is pretext.")).The lack of causal connection is reinforced by the undisputed evidence of Plaintiff's failure to meet Defendant's expectations.

Even if Plaintiff established a prima facie case of retaliation, the evidence shows that Defendant offered a legitimate, nondiscriminatory reason for Plaintiff's termination and also forecloses any finding that the Defendant's reasons given for discharging Plaintiff were pretextual. Filing a complaint "does not clothe [Plaintiff] with immunity for past and present inadequacies, [and] unsatisfactory performance." *Kneibert v. Thomson Newspapers, Mich., Inc.,*

129 F.3d 444, 455 (8th Cir. 1997) (alteration in original) (quotation omitted). For these reasons, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

**Conclusion**

Based on the foregoing analysis, Defendant is entitled to summary judgment on Plaintiff's race/color and retaliation claims. In light of Plaintiff's lack of opposition, Defendant is also entitled to summary judgment for his religion, age and disability claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [ECF No. 26] is **GRANTED**.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 13th day of August, 2024.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**